UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JUDITH KAMERER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNUM LIFE INSURANCE COMPANY | ) CASE NO. |
| OF AMERICA; PROVIDENT LIFE AND | ) |
| ACCIDENT INSURANCE COMPANY; and | ) |
| UNUM GROUP | ) |
| Defendants. | ) |

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

## WITH JURY DEMAND

Plaintiff Judith Kamerer brings this action against Defendants Unum Life Insurance Company of America ("Unum Life"), Provident Life and Accident Insurance Company ("Provident") and Unum Group, for unlawfully refusing to pay long-term disability benefits ("LTD Benefits) under one individual insurance contract, and one group insurance contract. Defendants paid long-term disability benefits to the Plaintiff for approximately ten (10) years and then abruptly terminated benefits even though Plaintiff's debilitating health conditions had not improved.

## PARTIES

1. The Plaintiff, Judith Kamerer, ("Ms. Kamerer") is an individual having a usual place of residence in Olathe, Johnson County, Kansas.

2. The Defendant Unum Life Insurance Company of America ("Unum Life"), is an insurance company existing under the laws of the state of Maine having a substantial

place of business at 1 Mercantile Street, Worcester, Worcester County, Massachusetts, and is a licensed foreign insurer conducting business in Massachusetts.

3. The Defendant Provident Life and Accident Insurance Company ("Provident") is an insurance company existing under the laws of the State of Tennessee, having a substantial place of business at 1 Mercantile Street, Worcester, Worcester County, Massachusetts,. and is a licensed foreign insurer conducting business in Massachusetts,

4. The Defendant Unum Group is a corporation existing under the laws of the State of Delaware, having a principal place of business at One Fountain Square, Hamilton County, Tennessee, and having a substantial place of business at 1 Mercantile Street, Worcester, Worcester County, Massachusetts.

## JURISDICTION AND VENUE

5. Personal jurisdiction is predicated against all Defendants as they are all doing business in this Commonwealth.

6. This action involves a controversy exceeding seventy-five thousand dollars ($75,000.00).

7. This Court has complete diversity jurisdiction over this litigation as Plaintiff resides in Kansas and all Defendants reside outside of the state of Kansas.

8. This Court has original jurisdiction for ERISA welfare-benefit claims arising under 29 U.S.C. §1132 regarding the relief for sought under ERISA but no for the breach of contract claim, except by way of diversity.

## FACTS COMMON TO ALL COUNTS

A. *Information about Unum Group.*

9. Unum Group is an insurance holding company that controls the activities of its subsidiaries including Unum Life and Provident pursuant to a General Services Agreement and other documents governing the operation of Unum Life and Provident.

10. Neither Unum Life nor Provident have employees. All persons that conduct the business of Unum Life and Provident are employed by the Unum Group. The details of this relationship are set-forth in the affidavit of William T. Bradley of the Unum Group and attached herewith as **EXHIBIT A**.

11. Unum Life, Provident and the Unum Group have a history of parsimonious claim denials specifically set forth in the Findings of and Facts and Conclusions of Law of United States District Judge James C. Mahan dated November 14, 2008, Merrick v. Paul Revere, 594 F.Supp.2d 1168 (D. Nev. 2008). A copy of the Findings of Fact and Conclusions of Law are attached herewith as **EXHIBIT B**.

12. Similar conclusions are set forth in a law review article by the leading ERISA scholar, John H. Langbein, Sterling Professor of Law, Yale University, Trust Law as Regulatory Law: The Unum/Provident Scandal and Judicial Review of Benefit Denials under ERISA, 101 Northwestern Univ. Law Review 1315 (2007).

13. On November 18, 2004, Unum Group entered into the Regulatory Settlement Agreement ("RSA") with 47 state regulators, including the Commissioner of Insurance for the Commonwealth of Massachusetts and the State of Illinois. Unum Group entered into a separate agreement with the Commissioner of Insurance for the State of

California and a few other states. Unum Group paid a $15 million and its companies agreed to implement a corrective plan of action set forth in the RSA which resulted in payments approaching $700 million dollars to claimants whose benefits had been wrongfully denied or terminated.

14. Unum Group agreed that it would be

    Affording significant weight to a SSDI award means that the SSA records related to the SSDI award are reviewed and consideration of the SSA's judgment that a claimant is disabled for SSDI purposes will generally be an essential element of the Disability evaluation under the governing Disability contract.

15. On October 3, 2005, Unum Group entered into an amendment to the RSA where Unum Group agreed that it would be

    Giving significant weight to an attending physician's ("AP") opinion, if the AP is properly licensed and the claimed medical condition falls within the AP's customary area of practice, unless the AP's opinion is not well supported by medically acceptable clinical or diagnostic standards and is inconsistent with other substantial evidence in the record. In order for an AP's opinion to be rejected, the claim file must include specific reasons why the opinion is not well supported by medically acceptable clinical or diagnostic standards and is inconsistent with other substantial evidence in the record.

16. Rather than considering each claim on an individual basis, Unum Group has a stated goal of reducing the claims benefit ratio. In order to reach this goal, Unum Group makes claim decisions not always on the merits of each claim but in-part by setting company-wide goals to eliminate claims which frees funds tied up in claim reserves.

17. Unum Group has the ability to track financial data pertaining to claims, and review specific claims reserves attributable to a particular insured through databases that can be viewed through other databases sometimes called Operations Metrics and Reporting.

18. E-mails are routinely sent by management to the claims handlers that discuss monthly, quarterly, and yearly historic targets/goals, recoveries, reserves, expected resolution

dates ("ERD"), and advance pay and close ("AP&C") of claims.

19. Financial information is tracked and shared with claims handlers in various software based documents.

20. Unum Group uses a euphemism "recoveries", "ERD", "AP&C" "outcomes" to mean terminating claims.

21. Unum Group permits claims handlers to learn about financial reserves, and requests that claims handlers make "recoveries" at specified times and to provide lists of Expected Resolution Dates ("ERD") on a specified basis. This may cause claims handlers to make benefit decisions based on financial goals rather than always examining the merits of each claim.

22. In 2005, Unum Group established the "Manager Toolkit 2005 Business Plan & BBS Communications The Business Center" which was the foundation for the Benefits Center Scorecards setting standards for liability acceptance rates and other metrics that impacted company profitability. A copy of the Manager Toolkit is attached herewith as **EXHIBIT C**

23. Unum Group management sends to its Claim Directors, or makes available to the Claims Directors, Weekly Tracking – Quarter Review reports focusing on the number of claims that management expects will turn into a "recovery" at specified time periods. A copy of a Weekly Tracking – Quarter review report is attached herewith as **EXHIBIT D**.

24. Unum Group management sends to its Claims Directors, or makes available to the Claims Directors, IDI Director Scorecard reports focusing on the number of claims that it expects will turn into a "recovery" at specified time periods and whether projections

5

have been met. A copy of IDI Scorecard reports is attached herewith as **EXHIBIT E**.

25. IDI Scorecards are color-coded, green showing that expectation is being met, and yellow or red showing an expectation is not met.

26. Unum Group has various compensation programs available to different levels of employees, including the Management Incentive Compensation Plan ("MICP"), Long-Term Incentive ("LTI") plan for managers, including physicians who work for the defendants, and the Performance Recognition Plan ("PRP") for non-managers if not under the MICP, or other bonus programs set-forth in the Manager Toolkit 2005 Business Plan & BBS Communications The Business Center.

27. At all times relative hereto, Defendants have been operating under an inherent structural conflict of interest as the Unum Group, Unum Life and Provident are liable for benefits payable to Ms. Kamerer from their own assets.

B. *Information about the group and individual disability policies.*

28. By occupation, Ms. Kamerer is a former Associate Partner with Accenture LLP where she led a large delivery organizations, performed quality reviews, and processed reviews for approximately 80 employees working under her supervision.

29. Accenture LLP provided to its employees long-term disability insurance coverage through a long-term disability insurance plan that was fully insured by Unum Life and the Unum Group as identified in the long-term disability plan, policy number 578456 001 ("the LTD Plan").

30. To the extent not governed under ERISA, the LTD Plan is governed by the laws of the State of Illinois.

31. At all times material hereto, Ms. Kamerer was beneficiary and a participant in the LTD

Plan, as defined by ERISA, 29 U.S.C. § 1002(7).

32. Ms. Kamerer is also the owner and insured under an individual policy sold to her by Provident, identified by policy number 06-600-6159714 ("IDI Policy"), which had been offered for sale under the laws of the State of Illinois.

33. Both policies promise to pay benefits as long as Ms. Kamerer is disabled from performing her former occupation, for the life of both policies, which is through age 65.

34. At all times material hereto, Ms. Kamerer has been "totally disabled" within the meaning of the terms of the LTD and IDI Policy, and has been entitled under both the LTD Plan and IDI Policy to be paid long-term disability benefits, and she continues to be disabled to date.

C. *Information about Ms. Kamerer's claims for benefits under the LTD Plan and IDI Policy.*

35. Effective May of 2004, all Defendants determined that Ms. Kamerer was unable to perform her own occupation due to chronic joint pain, blinding migraine headaches, interstitial cystitis, and fibro-fog.

36. Defendant Unum Life continued to pay Ms. Kamerer benefits under her group policy for almost a decade, until September 19, 2014, when Unum Life terminated benefits under the LTD Plan for unlawful reasons.

37. Between May 2004 and September 19, 2014, Ms. Kamerer's health conditions never materially improved.

38. In 2014, the defendants contended for the first time that Ms. Kamerer was no longer physically impaired from working in her occupation, but argued that she was impaired solely for non-physical reasons, and as a result all defendants could terminate her benefits because of purported limitations for benefits for certain illneses.

39. Defendant Provident also continued to pay Ms. Kamerer benefits under the IDI Policy for almost a decade, until December of 2014, when Provident terminated benefits under the policy for unlawful reasons.

40. In terminating benefits, all Defendants relied on a biased opinion of Steven L. Hendler, MD, whose business is called "Disability Management Associates," which Unum Group paid for his in-person evaluation of Ms. Kamerer.

41. Dr. Hendler has spoken publicly about the lucrative nature of his "occupational medicine" business, how the employers refer most of his "patients" to him, and about how many of those "patients" are faking their illnesses, have psychological issues intertwined with their illnesses, and how it is his job to make sure "people aren't taking advantage of the system".   A copy of Dr. Hendler's statement is attached as EXHIBIT F.

42. Ms. Kamerer appealed both claim denials, submitting information supporting her total inability to work, including sworn statement testimony from her treating physician attesting to her continued total disability from working in her own or any occupation, and exhausted all of her administrative remedies required under ERISA.

43.  Defendants upheld the claim denials on appeal.

## COUNT I – BREACH OF CONTRACT AGAINST DEFENDANTS PROVIDENT AND UNUM GROUP

44. Ms. Kamerer repeats and realleges the allegations set forth in the preceding paragraphs and incorporate the same by reference herein.

45. Defendants Provident and Unum Group breached their duties under the IDI Policy by unlawfully terminating benefit payments.

46. As a direct and proximate result of Defendants' breach of contract under the IDI policy, Defendants Provident and Unum Group caused damages to Ms. Kamerer.

### COUNT II – VIOLATION OF 215 ILCS 5/155 AGAINST DEFENDANTS UNUM GROUP AND PROVIDENT FOR BAD FAITH/UNREASONABLE AND VEXATIOUS CONDUCT

47. Ms. Kamerer repeats and realleges the allegations set forth in the preceding paragraphs and incorporate the same by reference herein.

48. Defendants Unum Group and Provident unreasonably and vexatiously refused to pay benefits under the IDI Policy, in violation of the terms of the IDI Policy and under the laws of the Illinois and other jurisdictions, if applicable, by failing to pay benefits due to Ms. Kamerer and denying insurance coverage to Ms. Kamerer as she reasonably expected.

49. As a direct and proximate result of the acts and omissions of Defendants Unum Life and Unum Group in refusing to pay benefits to Ms. Kamerer, she suffered damages, including loss of benefits, interest and attorneys' fees and costs, and statutory damages of no less than $60,000.00

### COUNT III – CLAIM FOR BENEFITS PURSUANT TO ERISA §502(a)(1)(B), 29 U.S.C. 1132(a)(1)(B) AGAINST DEFENDANTS UNUM LIFE AND UNUM GROUP

50. Plaintiff incorporates all preceding paragraphs above as if fully restated herein.

51. ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B) permits a plan participant to bring a civil action to recover benefits due to her under the terms of a plan, to enforce her rights under the terms of a plan and/or to clarify her rights to future benefits under the terms of a plan.

52. Unum Group and Unum Life unlawfully terminated LTD Benefits payable to Ms.

Kamerer under the LTD Plan.

53. Defendants Unum Life and Unum Group operate under a conflict of interest in its dual role as payer of benefits, and the entity that decides eligibility for benefits.

54. The actions of Defendants Unum Life and Unum Group have caused damage to Plaintiff in the form of benefits lost as a result of the wrongful denial of her claim for long-term-disability benefits.

55. In addition, because Defendants Unum Life and Unum Group denied the payment of Kamerer's long term disability benefits, Kamerer may have become ineligible for other benefits provided through her employment such as pension, medical benefits, and the waiver of group life insurance premiums.

56. This Court must review the termination decision of both Unum Life and Unum Group *de novo*.

57. The State of Illinois prohibits insurance companies from exercising discretion when evaluating disability insurance claims pursuant to 50 Ill. Admin. Code §2001.3. *See Fontaine v. Metro. Life Ins. Co.*, ---F.3d.---, 2015 WL 5173039 (7th Cir. Sept. 4, 2015)(Illinois insurance regulation applied to require de novo review of participant's claim).

58. This Court must decide the benefits issue in a plenary proceeding.

## COUNT IV – AWARD OF ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. §1132(G) AGAINST ALL DEFENDANTS

59. Plaintiff incorporates all preceding paragraphs above as if fully restated herein.

60. As Unum Group and Unum Life unlawfully terminated benefits, and have caused Kamerer to incur attorneys' fees and costs, and will cause her to incur additional fees and costs, Kamerer is entitled to recover under 29 U.S.C. §1132(g), costs of this litigation,

including reasonable attorneys' fees, and interest on all past due benefits.

**WHEREFORE,** Plaintiff Judith Kamerer demands relief and judgment as follows:

1. Awarding Plaintiff damages against Defendants Provident Life and Accident Insurance Company and Unum Group for past due benefits due under the individual insurance policy (policy number 06-600-6159714), for prejudgment interest on past due sums, post-judgment interest, statutory damages of no less than $60,000.00 under Illinois law, attorney's fees, costs and for an Order to pay Plaintiff future monthly benefits.

2. Awarding plaintiff equitable relief under 29 U.S.C. §1132 declaring rights and duties of the Plaintiff and Defendants Unum Life Insurance Company of America and Unum Group with respect to past due benefits owed to the Plaintiff, and future benefits to be paid to the Plaintiff, and obligations of the Unum Life Insurance Company of America, and Unum Group, should the Internal Revenue Service charge Plaintiff with fines and/or penalties and interest.

3. Awarding Plaintiff attorneys' fees, costs and interest under 29 U.S.C. §1132(g) against Defendants Unum Life Insurance Company of America and Unum Group.

4. For other such legal or equitable relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues triable by jury.

                Respectfully Submitted

                **JUDITH KAMERER**

                /s Talia Ravis
                Talia Ravis
                MO Bar #22212
                Law Office of Talia Ravis, PA
                9229 Ward Parkway, Suite 370
                Kansas City, Missouri 64114
                816-333-8955
                1-800-694-3016 (fax)
                travis@erisakc.com

                */s/Jonathan M. Feigenbaum*
                Jonathan M. Feigenbaum, Esq.
                B.B.O. No.546686
                184 High Street
                Suite 503
                Boston, MA 02110
                Tel. No. : (617) 357-9700
                FAX No.: (617) 227-2843
                jonathan@erisaattorneys.com